versus the estate of Aaron Rosen at all defendants. Appellees arguing for the appellant, Donald Rosen, arguing for the appellee, Brad S. Grayson. Good morning. Gentlemen, thank you for joining us here for oral argument. Someday we may actually be in person but I guess we just have to wait for that day. All right, Mr Rosen if you are ready you may proceed. Yes, Your Honor. May please the court and counsel. I'd like to address three points with the court. The first is that the Supreme Court action pending in the Supreme Court of New York. The second, the action before the surrogate court of New York. And the third, whether or not the writing from my uncle Aaron Rosen now deceased was sufficient to meet the question of the statute of frauds. With regard to the action before the Supreme Court of New York. This action has the brief state is only against Christina Kim and is not against the estate. The action in Illinois is based on a breach of contract between my uncle Aaron Rosen and myself, way back in 2003 in Chicago, Illinois. I, I would urge the court to consider as a metric as to whether or not the Supreme Court is a duplicate litigation, whether or not I would be able to get relief in these allegations in the Supreme Court of New York. I would argue that I was the Rosen. Yes, I think your argument is well placed as it relates to the Supreme Court action in New York. And if my colleagues have follow up questions if they disagree, they can ask that but in the interest of time I'd ask you to focus your argument on the surrogate case. Yes, Your Honor. Thank you. With regard to the surrogate court. The real question here is whether or not there was a judgment in the surrogate court. I certainly wanted the surrogate court to hear this action before I filed it in Illinois. They were the probate court in New York, they were probating the will. I brought the in New York surrogate court. One needs to file a petition and it took me a long time to get the clerk of the surrogates court to even allow me to file that petition. Pro se. After I filed the petition, the surrogates court, their procedure is once you filed a petition, they need to file a citation. And in New York, the citation is basically the surrogates courts way of saying we accept your petition for hearing and we have scheduled your hearing. The surrogate courts did not accept my petition for hearing. And instead of a citation, they filed their order, which stated, we're not going to entertain this action. And we're not even going to entertain the petition for filing. They basically refuse to take jurisdiction over it. Mr. Rosen, if I can interject, did they cite reasons for that? Did they say something about the New York statute of frauds and relevant case law in their decision? They did, Your Honor. They, they mistakenly felt that there was no writing. And based on the New York statute of frauds, since there was no writing in their opinion, the the court did not have to entertain it. Your petition, it did not allege a writing or attach the writing, which is different than what you did in Illinois. But is that correct in terms of what you did in New York? That is correct, Your Honor. I did not realize I was mistaken in making that petition that the writing would be necessary because I thought they would apply Illinois law. Well, Illinois law would would we not require you to satisfy the statute of frauds as well? I, I understand that, Your Honor. I, I, I did. Had we been able to go through a hearing. In the surrogate court, had the surrogate court entertain it and had the state made that argument, I certainly would have produced the writing at that time. And maybe amended the petition to meet those needs. I, I'm not saying that the petition was articulately drawn. My argument is that the surrogates court did not entertain the petition. Mr. Rosen, I can understand some of your frustrations, but from a legal standpoint, are there not some case law in the state of New York where this was filed with this particular action that you're talking about was filed that holds that the surrogates courts decree or decision is considered to be a ruling on the merits? There is absolutely no case law that states that, Your Honor. I've researched it. And in fact, opposing counsel has researched it. They came up with a case that was absolutely far from on point. I can't recall what the, what their case dealt with, but no, Your Honor, there is no case law that says that they, that the, the surrogates court's failure to entertain is anywhere near an equivalent to a judgment. You might anticipate why I'm asking that because if it was a judgment, you'd also be falling within the realm of raised judicata as well. Absolutely, Your Honor. And if that were the case, we would not, I would not have brought this to the, to the appellate court. But the fact is that the trial court's order did not raise that as an issue. They, they raised, they dismissed on the basis of duplicate jurisdiction in the two courts. Right. They wouldn't have 619. I understand that. But however, there is also the doctrine, though, I'm sure you're aware, being very familiar with the law, is that the court, the appellate court could affirm on any basis in the record, notwithstanding the rationale of the trial court. You're aware of that, right? Yes, Your Honor, I am aware of that. And Your Honor, so getting back, the fact is, I have seen no case law. And I would firmly suggest that there is no case law that, that has decreed that any court that fails to entertain a matter is a judgment. On that matter, that decision is appealable in New York, correct? I'm sorry. That decision not to entertain jurisdiction is something that can be appealed in New York. Is that correct? Your Honor, no, I don't believe it. I mean, anything can be, you know, you can bring any action to a court. But the SCPA Circuit Court Procedures Act 1809 allows for, for discretion of the surrogate's court not to entertain a matter. And as long as that discretion is there, there would be no point in appealing it because the court did not abuse its discretion. Well, we get a lot of appeals on abuse of discretion, but you did go in and in an attempt to ask that decision to be reconsidered. And you explained that you were not successful, but you made that effort, correct? I did, Your Honor. I filed the motion and the clerk stopped the motion before it got to the court, saying that you cannot file a motion in the surrogate's court once the surrogate's court has denied the petition. So that motion to re-argue was never even presented to the surrogate's court, even though I tried to file it. And you never tried to file an appeal after that, is that correct? Instead, you came right to Illinois and filed this action. Yes, Your Honor, because the contract was executed in Illinois, the witnesses were all in Illinois, and I felt Illinois was a better forum to hear a breach of contract that took place in Illinois. And again, to appeal the surrogate's court decision to me seemed to be fruitless, a waste of time and money when the surrogate's court did not abuse its discretion in refusing to entertain it. You knew it was dismissed based on statute of frauds, and you have what is purportedly a quote-unquote contract that might address some of the issues and statutes of fraud. You had the bite at the apple to include that in your pleading in New York. In the surrogate's court pleading? Yes. Yes, Your Honor, and I agree that I inarticulately drafted the original petition. That was an error on my part, but the petition was not heard. Had there been a hearing on the petition, I would have produced that document. Can I ask about the, let's go to the 2615 request to dismiss, which was not ruled on, on the statute of frauds question. When I look at the contract, how is it enforceable? There's no material terms. I know you say the oral agreement was, I'll give you 20%, but the written evidence of that is merely, I promise to put you in my will. How, ultimately under statute of frauds, how would that be enforceable? Because the contract was executed at the same time as the will. They were two documents integrated by time and by intent. The contract relates to the will, which was executed and gave the terms of what the contract intended to provide. Thank you.  And what, what did you have that you would have attached to your petition had you gone to hearing in the surrogate's court? I would have attached the same thing I did in Illinois. I would have attached the contract, that memorandum, which would in and of itself has satisfied the general obligations law in New York, which was what the New York court, what the New York court had objected to. But I would have also attached the will along with that to show that those two documents were integrated at one seamless contract. So you had a copy of the 2003 will, correct? Correct. Was it executed? Yes, and witnessed by two witnesses locally. And in fact, one of those witnesses, I had deposed in the New York Supreme Court action. And that witness testified under deposition. And I believe that that's part of your part of the record, that those two documents were contemporaneously executed and she had witnessed them both. Now you received information that there was more than the 2003 will and the 2017 will that was subject to this, this litigation basically that we're talking about. How did you find that out through the independent New York case against the Miss Kim or I'm sorry if I'm mispronouncing the name. No, you're not, Your Honor. And yes, in discovery in the, in my action against Miss Kim individually, her attorney provided me with four wills between 2003 and 2019, showing that my uncle had not had himself in fact as early as 2004 revoked the 2003 will that was the subject of the contract. So once I received those wills, that's when I realized that there was a breach of contract that I need to file against the estate. My understanding was that Miss Kim had just destroyed the 2003 will, and while my uncle was sick with kidney failure and, and under I believe dementia through that had just simply coerced or deceived him into breaching the contract. At the point that I saw that there were wills, as early as 2004, I realized that my uncle had himself breached contract, and therefore file the action against the estate. Thank you. I can ask you a question, you obviously you've referenced in your claim and you're pleading that you did submit a timely motion. Excuse me to re-argue and renew your claim, but the circuit courts clerk refused to file the motion, correct? Correct, Your Honor. I take it you must have gotten at some point some correspondence back from the circuit courts clerk, right? I did, Your Honor, and it's in the docket. You did provide that in the record? You did provide the correspondence? I'm not sure, Your Honor, whether that correspondence was part of the record. The docket was part of the record, but I don't know that that correspondence was included. In fact, I don't think it was. All right. But if you look at the docket, the docket will show that the only thing after the judge's order was not the motion to re-argue, but the clerk's letter. And that clerk's letter and that docket itself with that information is part of the record. All right. Thank you. You're welcome, Your Honor. Mr. Rosen, your initial time is up. If you want to quickly touch upon another point, you said you had three, you may do so, or you can wrap up and we can listen to Mr. Grayson. No, Your Honor, I won't take up the court's time. I think that the questions you've asked have certainly covered all of the issues that I wanted to make, so you could go on to Mr. Grayson. Thank you. You will have an opportunity to respond. Yes, Your Honor. Thank you. Mr. Grayson, you may proceed if you are ready. Thank you, Your Honor. The circuit court's decision to dismiss the case should be affirmed here. The circuit court's decision to dismiss under section 2619A3 was not an abuse of discretion. And 2619A3 motions are reviewed on an abuse of discretion standard because it's a discretionary decision of the court. And this ruling was not, as the performance network case that we cited, this decision was not arbitrary, fanciful, or unreasonable, such that no reasonable person would take the same view. The Kellerman case and the Kapoor case also make clear that we're dealing with an abuse of discretion standard here on a 2619A3 dismissal. Mr. Grayson, I can ask a threshold question. How does the Kim lawsuit satisfy the requirement of the same parties? Are they the same parties? They're not identical, Your Honor, but the, bear with me a second. The courts have said that they don't have to be identical in name or number. Their interests must only be sufficiently similar. And that's in the Kapoor case and in the performance network solutions case. Here, Christina Kim, individually and as a representative of the estate, have the identical interest in opposing plaintiff's claim. Therefore, their interests are sufficiently similar. They're in fact identical here. Therefore, the same parties requirement is met, we believe, under 2619A3. Are you saying that Kim's interest in her individual capacity is not divergent from her interest as executor of the estate? Well, as the executor of the estate, the executor of an estate always has a duty to defend the existing will or trust documents, as it were, that are applicable. In this case, Mr. Rosen, the plaintiff, would be seeking to set aside Mr. Rosen's current will because he claims it violated a promise that was made back in 2003 to include him in the will. So Ms. Kim, as well as her co-executor, would have a duty to oppose that claim were it to have been allowed to proceed in the New York estate administration proceeding in the surrogates court. Likewise, Ms. Kim's interest in the New York Supreme Court case, obviously, was to disprove that promise as well, because it was the underlying basis on which relief was being sought against her. How was the surrogate courts proceeding pending within the meaning of the statute? Well, the case was still pending at the time that the case was filed. Granted, Mr. Rosen's claim had already been rejected, as we've discussed, for substantive law reasons, but the rest of the administration of the estate was ongoing. In fact, Mr. Rosen admits, and he put things in the record here, that he was still filing motions for relief himself in that proceeding, including seeking to freeze assets of the estate pending the resolution of both the New York Supreme Court case, as well as the Illinois litigation. When the surrogate court rejected the claim on ostensibly the merits, how was it still pending? They wouldn't allow him to refile, he's alleged, his complaint. So how was that still a pending merit? I believe that until, I'm not sure that it was a final judgment at that point, so I think it was still subject to appeal. So I'm not sure it was fully resolved. In the alternative, it was fully resolved, and there admittedly is not a lot of case law in New York on rejecting claims in estate administration proceedings. And if it was a final judgment, then the appeal time presumably had already expired, and res judicata would apply. So, Mr. Grayson, you say there's not a lot of cases. I can't find one. Have you found one? I have not actually, Your Honor. I don't know. I looked extensively to find a case involving an appeal or the procedure that follows once the court rejects the claim, as it did here. And I admittedly could not find a published decision in New York in which an appellate court addressed the procedural issues or the appeal rights or anything for that matter, as you know. So, following up on that, I mean, if Mr. Rosen's petition is rejected by the court, he's not in any way, it would seem to me, a fair argument that he's not in any way a party to that action at that point. I know the action's pending, and he tried to become a party, but how do we argue, as it relates to him in this question of 2619A3, that he's a party where it's pending? Well, I guess I would liken it to a situation where, in Illinois, there hasn't been a Rule 304A finding where one of the claims in the case has been resolved, but there remain pending matters in the case that keep the matter from going up on appeal. In that case, the case, I believe, would still be pending, even though that particular claim had been resolved by the lower court. Now, again, Your Honor, I'm unable to find anything in New York that addresses this precise situation. But what I would fall back on is, even if that case is impending, and I believe in some ways it is, because Mr. Rosen is filing for other relief in the estate administration proceeding relating to this claim, seeking to freeze assets, etc. So, there is ongoing action by him in that case, and he's seeking to protect himself in the event that he prevails on this claim. I would say that I know there had been some indication that there was some doubt as to whether the New York Supreme Court case is a pending case for the same cause between the same parties. I would argue that, in fact, I think it pretty clearly is. The 2003 promise, or alleged promise, made by Aaron Rosen to Mr. Rosen, underlies all of his claims in the New York Supreme Court case. And so, the relief doesn't have to be the same. The case law in Illinois on 2619A3 says it's a prior cause, or a pending cause, not a pending cause of action. So, the cause of actions don't have to be the same. The relief sought doesn't have to be the same. The question really is addressed to whether there's the same factual foundation for the claims, and I think quite clearly there is the same factual foundation for the claims between the New York Supreme Court case and the case that Mr. Rosen filed here in Illinois. But 2619A3 is concerned with comedy, the danger of judgments that are adverse to each other. I mean, in the New York Supreme Court case, the court or the fact finder could easily say, I don't think Ms. Kim committed any fraud whatsoever. But that would not be inconsistent with the trial court in Illinois finding that there was a breach of promise by Mr. Rosen. I mean, those comedy and adverse judgment type of issues, I mean, they're not necessarily in play in the New York Supreme Court case. Well, but the Supreme Court would have to find, as an underlying matter, whether there was an enforceable promise made by Mr. Rosen to Mr. Rosen. And that particular issue would be litigated in both cases, and there would be a risk of inconsistent rulings by a New York court, for example, saying we do find there's an enforceable promise, or we don't find there's an enforceable promise to support the claims, and then the Illinois court finding exactly the opposite. Let me ask a slightly different question. So there are New York cases, just like there are Illinois cases, saying that a statute of frauds ruling is a judgment on the merits for purposes of res judicata. Are there any New York cases that a rejection of a case is a judgment on the merits? I could not find anything. I don't know how else it can be interpreted. However, given that the New York court, specifically, it didn't just say we're not taking jurisdiction on this matter, we think this belongs in Illinois. We're not accepting jurisdiction. It rejected the claim expressly on substantive law grounds, cited two different New York statutes that require that the promise be made in writing. And it also cited the New York case of a state of Hennel, which rejected a claim where there was no sufficient writing to support the promise. So the New York court, it appears, believed that it was making a ruling on the merits on the substance of the claim, having received the claim from Mr. Rosen, and Mr. Rosen having not presented any writing that would support the claim based on a promise by the decedent. The New York court did that, where we know on the statute of frauds, but now you've said that Mr. Rosen has continued to file things to protect his interest in New York. Have those filings been accepted? My understanding they have, and I don't see any evidence that they've been rejected. And Mr. Rosen has cited them. They've been shown on the docket of the court. He filed a petition to freeze the asset of the estate. And he said in his reply brief on appeal that he did so not only to protect in the event that he recovered in the Illinois case, but to protect in the event that he recovered in the New York Supreme Court case, which I think is further evidence that even Mr. Rosen recognizes that the cases arise from the same alleged promise. Moreover, Mr. Rosen also in his briefs talks about the fact that he could have brought, because it arises from the same set of facts, he could have brought the claim against the estate, not just against Miss Kim individually in the Supreme Court case in New York, but speculates that they may not have taken the case, finding that a claim against the estate more properly should have been brought in the surrogates court, which is where of course he originally did bring a claim and it was rejected. The grace of the side from the issue of whether the surrogate court ruled on the merits of the claim and getting near the end of your time. I take it that with respect to the ruling by the trial court in Illinois, it's your position that the trial court properly apply and balance the color factors. Is that correct? Yes. Okay. The Kellerman factors, because of the possibility of inconsistent results, also the potential for harassment of allowing a party to file in multiple forms at the same time against the same parties or effectively the same parties. The Kellerman factors, I think, all way in favor of the 2619A3 ruling that the circuit court made. And that's why we believe it was not an abuse of discretion at all. In fact, even if it was subject to a de novo standard of review, we believe the decision was correct. All right. Thank you. I'm happy to entertain any other questions or to defer at this point to Mr. I have no further questions at this point. Thank you very much. Thank you, Mr. Grayson. Mr. Rosen you may you may reply if you choose to do so. Yes, Your Honor. First of all, there's a certain irony in Mr. Grayson's arguing that the surrogate court action that is pending for the freezing of the funds has anything to do with the, with the claims themselves. And the reason I say that it's ironic is because in that action. The state is arguing that the action before the Supreme Court is not an action against the state. Essentially, they're arguing the exact opposite of what they argued in the circuit court in Illinois, where they were saying that the state action was that that the Illinois action was duplicate of the action in the Supreme Court. Now they're they've they've flipped the script and saying, because the Supreme Court action is against Christina Kim individually. Are you guys still there. Yes. reserve any money for that, for that judgment, if it comes. So, there's, there's a real hypocrisy and how they're they're making their two arguments. The second issue that I'd like to raise is that with regard to that is that the, the, the petition to reserve funds is not based on any claim before the surrogate court as a surrogate court has already rejected that those arguments and decided not to entertain them. It's based on the Illinois court action which was dismissed, and which is before this court now. And the Supreme Court action. And as I said, the, the state is now arguing that the Supreme Court action should not have reserve funds, because it's not against the estate. So it's not duplicate, they've basically admitted it. With regard to the Kellerman factors. I would argue that basically none of the Kellerman factors favor the dismissal comedy would would suggest that that the circuit court should have not should respect the surrogates court decision to not entertain it, and to simply hold the have the action in their hands. Instead of, instead of her instead of in their order, suggesting that I should have instead appealed back to the circuit court of New York. There was no harassment, which was another Kellerman factor, because I originally tried to file in the surrogate court of New York, which would have been in their jurisdiction, and the right form, if the circuit court and accepted it. Instead, and in fact, the state could have could have said, we would stipulate to having the action in the circuit surrogate court of New York. Instead they sat mute while the surrogate court decided not to entertain it. Basically, all of the Kellerman factors in this case, certainly the, the question of whether and now we come back to the original question I had, can I get relief in the Supreme Court of New York for a breach of contract against the party that's there. Miss Kim was not a party to the contract. Only my uncle and I were, and my sister is as a third party beneficiary. But since Christina Kim was not a party to the contract for me to try and litigate against her for breach of contract in New York would be fruitless. I can try to bring the estate into the Supreme Court action, but that shouldn't be necessary. The form for having that heard in Illinois was appropriate. The Illinois, as I said, the, the contract was executed in Illinois witnesses were in Illinois. It, it, the state of Illinois has a vested interest in dealing with with matters that take place within the state of Illinois. Well, therefore, for those reasons I would urge this court to reverse the order of the circuit court and to allow me to, to litigate this matter in the circuit court of Illinois where I believe it belongs. Well, what is in our record here, Mr Rosen that would indicate that all of these things have happened, like the rejection letter or any of the other documents that have frustrated your efforts in New York, what have you put, what did you provide in your pleadings or in this particular action that would give us that information. Which rejection letter you referring to your honor the, the, the, the clerks the circuit clerks rejection. That would be the after it in the server. After the server applied. I provided the court with a copy of the docket of the surrogates court. And then the docket of the surrogates court. The court can see on March 10, the courts order rejecting the, the petition. And then on March 12, the sir, the, the, the letter from the clerk of the court. I did not include the letter itself, but the, the court could see from the docket that the motion to re argue was not on the docket. And that was because it was rejected so it could be easily inferred by the court that the clerk's letter is what I say it was that the, that the clerk was rejecting any motions because there was no petition. Is that an inference that we should, I mean I understand you're an officer of the court and I respect that but we have to base it on the record and how is that an inference we draw from the record, the absence of any docket entry. Yeah, I understand that your honor. The only thing I could suggest is that the, the fact that the record does not indicate that there was a motion to re argue, even though I drafted a motion to re argue. There was nothing to indicate that it was ever presented to the court. That is a matter of record. Even though the court doesn't have the content of the clerk's letter. The court does have the fact that the motion to re argue was never presented to the court through the docket. But, I mean, one of the things that makes this difficult is that I guess, obviously the surrogate clerk, the surrogate courts clerk has the right to reject things without the court interceding. We don't have a mechanism generally like that here. And that it would be helpful if we had that letter as to how and why. I appreciate that your honor and I wish I had thought that I wish I had foresight to have known this is where the arguments were going to go and had included that letter in the record. Unfortunately I didn't I just included the docket. Again, my, my mistake in not doing that, but I think regardless, if the question is that there was a motion to re argue that that that you're thinking that the surrogate court took into consideration. The, the docket should could show that the surrogate court did not take that into consideration. And I apologize to the court for not including the clerk's letter as part of the, of the record. All right. Your time is up at this point Mr Rosen if you want to summarize, you may do so. I think I think we've pretty much covered it. I think that the. Again, the, the idea that the, that the estate has argued successfully before the Illinois Circuit Court, that the, that the Supreme Court of New York's action was a duplicate of the action against the estate in Illinois. And then they are now arguing that the, that they should not have to reserve funds, because the action in Supreme Court of New York is not against the estate speaks volumes for for their intent. And I think that regardless of the, my failure to include certain things in the record and in my failure to provide the documents in the original petition. Should not be considered fatal to allow me not to have the opportunity to litigate these well founded allegations in the Illinois court where I believe it belongs. Thank you, sir. And thank you both for your arguments and being willing to participate with us here today under this format. We will take this matter under advisement, and we will render a decision in due course, we are going to take a brief recess at this time to prepare for our next oral argument. So, you are released at this point in time. Thank you. Thank you. Thank you all.